2017R00617/ETW



UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

filed 3/3/2022
2:46 p.m.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. *Peter G. Sheridan* |
| v. | : | Crim. No. 22- *172 (PGS)* |
| ENRICO CIFELLI, | : | 18 U.S.C. § 371 |
| a/k/a "Rick Cifelli," and | : | 26 U.S.C. § 7201 |
| MICHELLE BOCCHIERI, | : | 26 U.S.C. § 7202 |
| a/k/a "Michelle Cifelli" | : | 18 U.S.C. § 2 |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Trenton, charges as follows:

## BACKGROUND

1.     At all times relevant to this Indictment, unless otherwise stated:

a.     Defendant ENRICO CIFELLI, a/k/a "Rick Cifelli" ("CIFELLI"), and defendant MICHELLE BOCCHIERI, a/k/a "Michelle Cifelli" ("BOCCHIERI"), were brother and sister.

b.     CIFELLI resided in Holmdel, New Jersey.  BOCCHIERI resided in Matawan, New Jersey beginning at least in or around 2011.

c.     BOCCHIERI was, at various times, either a 100% or a 99% owner of Cifelli, LLC, a New Jersey limited liability company in the construction business.  BOCCHIERI was Cifelli, LLC's sole bookkeeper during the period of at least 2013 through early 2018, when Cifelli, LLC stopped keeping formal bookkeeping records.  Although he exercised operational control of the company in fact, CIFELLI never reported an official ownership interest in Cifelli, LLC.

     d.     CIFELLI was a 100% owner of Cifelli Disposal Inc. ("Cifelli Disposal"), a New Jersey C-corporation in the business of waste disposal. Cifelli Disposal ceased operations in or around late 2008 or 2009. Beginning in or around April 2005, Cifelli Disposal sometimes used bank accounts that were in Cifelli, LLC's name.

     e.     CIFELLI was a 100% owner of LBAB LLC ("LBAB"), a New Jersey limited liability company whose sole business was to lease employees to Cifelli, LLC from in or around 2009 to in or around 2015, after which it ceased operations. Beginning in or around 2011, LBAB had no bank accounts.

     f.     Raintree Court LLC was a New Jersey limited liability company 100% owned by CIFELLI's spouse and was formed for the purpose of being the record owner of the residence where, beginning in or around 2014, CIFELLI and his spouse resided.

     g.     Defendant CIFELLI had no bank accounts in his own name. Between in or around 2011 and in or around 2016, CIFELLI had debit cards from a total of approximately three entities he did not own (including Cifelli, LLC), which he used for personal expenses.

     h.     The Internal Revenue Service ("IRS") was an agency of the United States within the Department of Treasury and was responsible for administering and enforcing the tax laws of the United States.

     i.     A U.S. Individual Income Tax Return ("Form 1040") was the form filed by a taxpayer and used by the IRS to assess liability for personal income tax and eligibility for refunds.

j.      A Form 1040 was required to be filed, and any tax liability was required to be paid, by on or about April 15 of each year for the preceding calendar year unless the taxpayer obtained an extension to file the tax return.

k.      Pursuant to the Internal Revenue Code and associated statutes and regulations, including the Federal Insurance Contribution Act ("FICA"), employers were required to withhold amounts from the gross salary or wages of their employees to cover individual income, Social Security, and Medicare tax obligations. Employers were required to withhold these amounts to be held in trust on behalf of the United States and remit these withheld "trust fund" amounts ("payroll taxes") over to the IRS on a periodic basis, no later than the last day of the month following the end of the quarter.

l.      Employers were required to file with the IRS a Form W-2 for each employee whom, as relevant here, the employer paid $600 or more during a tax year or from whom the employer withheld federal income tax, Social Security, or Medicare tax, regardless of the amount of wages paid to that employee. The employer was also obligated to provide the Form W-2 to the employee for the employee to use in completing his or her own personal income tax return. Among other things, the Form W-2 identified the gross amount of the employee's wages or salary, as well as taxes withheld on the employee's behalf.

m.      Employers were required to prepare and file an Employer's Quarterly Federal Tax Return ("Form 941"), due on the last day of the month following the end of a quarter, setting forth the total amount of wages and

3

other compensation subject to withholding, the total amount of payroll taxes withheld from employees, and the total tax deposits made to the IRS. Form 941 also reflected the portion of Medicare and Social Security taxes that the employer owed directly to the IRS.

n.      Pursuant to the Internal Revenue Code, any person having authority to exercise significant control over an employer's financial affairs was deemed responsible for collecting, accounting for, and paying over payroll taxes, regardless of whether the individual in fact exercised such control. Such an individual is known as a "responsible person." The employer's unpaid payroll tax liability can be assessed against a "responsible person" individually and thereby becomes that individual's own tax liability. More than one person may be considered a "responsible person" for the purpose of collecting, accounting for, and paying over payroll taxes.

o.      CIFELLI exercised significant control over Cifelli Disposal's financial affairs. Thus, CIFELLI was a "responsible person," and was responsible for collecting trust fund taxes, accounting for those taxes by filing Forms 941 with the IRS, and paying over to the IRS those taxes for the employees of Cifelli Disposal.

p.      CIFELLI exercised significant control over LBAB's financial affairs. Thus, CIFELLI was a "responsible person," and was responsible for collecting trust fund taxes, accounting for those taxes by filing Forms 941 with the IRS, and paying over to the IRS those taxes for the employees of LBAB.

q.     A taxpayer who wished to make a formal offer to the IRS to satisfy an outstanding tax liability for less than the total amount of the liability could file with the IRS a Form 656 ("Offer in Compromise"), accompanied by a Form 433-A ("Collection Information Statement for Wage Earners and Self-Employed Individuals"). The taxpayer was obligated to provide complete and accurate disclosure of his or her income and assets, and those of his or her household and/or spouse, on any Offer in Compromise. The taxpayer was obligated to sign the both the Form 656 and the Form 433-A under penalty of perjury.

2.     From 2004 through 2008, Cifelli Disposal filed Forms 941 with the IRS every quarter, for a total of 20 quarters. Defendant CIFELLI signed all of these Forms 941. Collectively, the Forms 941 disclosed payroll tax liability totaling approximately $1,009,280.89, including funds withheld from Cifelli Disposal's employees for federal income tax, Medicare, and Social Security, as well as Cifelli Disposal's employer portion of Medicare and Social Security taxes. However, only approximately $513,464 was ever paid or collected by the IRS toward this liability, and no quarter was ever paid in full at the time the relevant Form 941 was filed. CIFELLI made some of these payments by personally handing checks to a representative of the IRS. Over time, Cifelli Disposal's payroll tax liability was assessed against CIFELLI personally as a responsible person.

3.     The IRS assessed a total of approximately $144,752.65 in penalties, interest, and fees on Cifelli Disposal's unpaid payroll tax liability.

4.     From 2009 through 2015, LBAB filed Forms 941 with the IRS in all but one quarter, for a total of 27 quarters.  Defendant CIFELLI signed all of these Forms 941.  Collectively, the Forms 941 disclosed payroll tax liability totaling approximately $671,442.78, including funds withheld from LBAB's employees for federal income tax, Medicare, and Social Security, as well as LBAB's employer portion of Medicare and Social Security taxes.  However, only approximately $64—entirely from levies the IRS issued—was ever collected and applied against this liability.  Over time, LBAB's payroll tax liability was assessed against CIFELLI personally as a responsible person.

5.     The IRS assessed a total of approximately $251,594.18 in penalties, interest, and fees on LBAB's unpaid payroll tax liability.

6.     Accordingly, the net assessed balance on Cifelli Disposal's and LBAB's combined payroll tax liability, including employee withholding, the employer portion of Medicare and Social Security taxes, penalties, interest, and fees, and after giving credit for all amounts collected by the IRS, was approximately $1,563,542.52.  As a responsible person for both Cifelli Disposal and LBAB, defendant CIFELLI was personally liable for this aggregate assessed balance due to the IRS.

## COUNT ONE
### (Conspiracy to Evade Payment of Taxes)

7.     From at least in or around 2013 to at least in or around October 2020, in Monmouth County, in the District of New Jersey and elsewhere, the defendants,

ENRICO CIFELLI,
a/k/a "Rick Cifelli," and
MICHELLE BOCCHIERI,
a/k/a "Michelle Cifelli,"

knowingly and willfully conspired and agreed with each other, and others, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS of the Department of the Treasury to ascertain, compute, assess, and collect income taxes.

### Object of the Conspiracy

8.     The object of the conspiracy was to evade payment to the IRS of more than $1.5 million in unpaid taxes, penalties, interest, and fees that defendant CIFELLI owed to the Internal Revenue Service in his capacity as a responsible person for the unpaid payroll tax liability of Cifelli Disposal and LBAB.

### Means and Methods of the Conspiracy

9.     It was part of the conspiracy that defendant BOCCHIERI funded defendant CIFELLI's lifestyle by disbursing—or causing or allowing to be disbursed—funds from Cifelli, LLC, or bartered services performed by Cifelli, LLC, to pay for, among other things, the down payment on CIFELLI's residence, the mortgage and other expenses on CIFELLI's residence, and CIFELLI's

wedding.  By funding CIFELLI's lifestyle in this way, BOCCHIERI enabled CIFELLI to evade making payment on the outstanding tax liability that he owed to the IRS.

    a.    For instance, on or about April 10, 2014, Raintree Court LLC closed the purchase of a $1.35 million home in Holmdel, New Jersey, where CIFELLI and his spouse subsequently resided (the "Holmdel Residence").

    b.    The initial deposit or earnest money of $50,000 to purchase the Holmdel Residence was wired from a Cifelli, LLC bank account to the buyer's attorney on or about March 17, 2014 and subsequently sent to a representative of the seller.

    c.    At closing, a total of $483,328.40 was due from the buyer, Raintree Court LLC.  Of that, $450,000 was paid with a cashier's check dated April 10, 2014 from Cifelli, LLC, funded via a withdrawal from Cifelli, LLC's bank account. BOCCHIERI signed the withdrawal slip and noted the transaction in Cifelli, LLC's books and records as "Down Payment for Property."

    d.    The $450,000 that Cifelli, LLC paid toward the purchase of CIFELLI's personal residence was financed as follows:

        i.    In or around April 2014, CIFELLI took out a loan in his individual capacity for $350,000 from a business associate, identified herein as Individual-1.  CIFELLI

pledged the Holmdel Residence and another residence owned by his spouse as collateral for the loan. On or about April 9, 2014, using an e-mail account belonging to CIFELLI, CIFELLI instructed Individual-1 to wire the proceeds of the loan to a bank account owned by Cifelli, LLC. A limited liability company owned by Individual-1 ("LLC-1") complied with those instructions.

ii.     On or about April 9, 2014, Cifelli, LLC received a wire transfer for $100,000 from LLC-2, a limited liability company owned by Individual-2, a business associate of CIFELLI.

e.     From in or around June 2014 (soon after Raintree Court LLC purchased the Holmdel Residence) through at least in or around October 2020, BOCCHIERI caused Cifelli, LLC to pay expenses for the Holmdel residence, including the mortgage, homeowner's insurance, and utilities. BOCCHIERI's phone number and/or e-mail address were listed as contacts for multiple utilities and insurance accounts for the Holmdel Residence.

f.     CIFELLI repaid the loan that Individual-1 made to CIFELLI in his individual capacity using only the following methods: (1) cash; (2) wire transfers from Cifelli, LLC's bank accounts, which BOCCHIERI noted in Cifelli, LLC's books and records; and (3) bartered services that Cifelli, LLC provided to LLC-1 in lieu of repayment of the loan.

g.     CIFELLI married his spouse in late 2013 at a country club in Monmouth County, New Jersey. The country club charged a total of approximately $71,000, including the following approximate charges, among others:

    i.    $4,842 for a seafood raw bar;

    ii.    $4,035 for a sushi station;

    iii.    $6,972 for a "five hour premium open bar," with "signature drink pear martini"; and

    iv.    $1,958 for "cigars rollers."

h.     Only $61,000 was paid to the country club. Of that amount, LLC-3—another limited liability company owned by Individual-2—paid $10,000. Cifelli, LLC or an entity with which it frequently collaborated paid the remaining $51,000 by providing $51,000 worth of bartered services to the country club.

i.     LLC-3 paid all other known expenses for CIFELLI's and his spouse's wedding.

j.      CIFELLI and his spouse received wedding gift checks totaling more than $36,000. Of those, approximately 57 wedding gift checks, totaling $33,925, were made out to CIFELLI or to CIFELLI and his spouse. These checks were cashed at a check casher rather than being deposited into a bank account. By contrast, wedding gift checks that did not refer to CIFELLI (for instance, because they were made out to his spouse alone or were made out to "cash") were deposited into CIFELLI's spouse's checking account.

10.    It was further part of the conspiracy that, in or around 2015 and 2016, defendant CIFELLI had a debit card issued in his name under a Cifelli, LLC business bank account for which defendant BOCCHIERI had signature authority. CIFELLI used the debit card to pay for personal expenses.

11.    It was further part of the conspiracy that defendant BOCCHIERI and others regularly cashed checks from Cifelli, LLC's customers at check-cashing businesses. The cash was used, among other things, to pay the employees that Cifelli, LLC leased from LBAB, thus allowing LBAB not to have funds in its own name that the IRS could have levied in an attempt to satisfy LBAB's unpaid payroll tax liability.

## Overt Acts

12.    In furtherance of the conspiracy and in order to effect the unlawful object thereof, defendants CIFELLI and BOCCHIERI caused the following overt acts to be committed in the District of New Jersey and elsewhere:

a.    On or about March 17, 2014, BOCCHIERI wired $50,000 from a Cifelli, LLC bank account for the initial deposit or earnest money for the purchase of the Holmdel Residence, where CIFELLI and his spouse later resided.

b.    On or about April 10, 2014, BOCCHIERI obtained a $450,000 cashier's check from a Cifelli, LLC bank account to pay for the purchase of the Holmdel Residence.

c.    On or about February 25, 2015, CIFELLI satisfied the balance of the loan that Individual-1 made to CIFELLI individually by bartering for services that Cifelli, LLC performed.  BOCCHIERI noted the transaction in Cifelli, LLC's books and records.

d.    From in or around June 2014 to on or about October 9, 2020, BOCCHIERI caused Cifelli, LLC to make regular periodic mortgage payments on the Holmdel Residence.

e.    On or about December 20, 2018 and on or about May 16, 2019, BOCCHIERI caused Cifelli, LLC to pay the homeowners' insurance premiums on the Holmdel Residence.

f.    From in or around August 2014 to in or around 2018, BOCCHIERI caused Cifelli, LLC to pay for utilities for the Holmdel Residence.

g.    On or about June 21, 2016, CIFELLI signed under penalty of perjury, and caused to be transmitted to the IRS, an Offer in Compromise, offering to satisfy his outstanding tax liability.  The Offer in Compromise contained multiple falsehoods, including misstating his assets, his spouse's income, and his household income.  The IRS received the false Offer in Compromise on or about June 30, 2016.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Evasion of Payment of Taxes Due and Owing)

13.    The allegations set forth in Paragraphs 1 through 12 of this Indictment are hereby realleged as if fully set forth herein.

14.    Defendant CIFELLI was repeatedly told by IRS representatives, and made statements acknowledging, that he had a substantial personal tax liability as a result of the unpaid payroll taxes of Cifelli Disposal and LBAB.

15.    From at least in or around April 2004 to in or around June 2016, in Monmouth County, in the District of New Jersey and elsewhere, the defendant,

ENRICO CIFELLI,
a/k/a "Rick Cifelli,"

did willfully attempt to evade and defeat the payment of the substantial payroll tax, interest, and penalties due and owing by him to the IRS for payroll taxes as reflected in Forms 941 filed by Cifelli Disposal (for each quarter from 2004 to 2008) and LBAB (for each quarter from 2009 to 2015, except for the third quarter of 2014, as to which LBAB did not file a Form 941), by committing the affirmative acts of tax evasion set forth below, among others:

      a.    concealing his income and the existence of funds available to pay his outstanding tax liabilities by using cash, as well as bank accounts and credit/debit cards belonging to Cifelli, LLC and others, to pay for personal expenses;

      b.    maintaining no bank accounts in his own name;

c.    causing Cifelli Disposal to use bank accounts in the name of Cifelli, LLC from in or around March 2005 through in or around December 2008;

d.    causing LBAB to stop having any bank accounts in or around late 2011, after the IRS began to levy LBAB's bank account in an attempt to recoup LBAB's unpaid payroll tax liability;

e.    causing LBAB's employees to be paid in cash;

f.    submitting to the IRS an Offer in Compromise that materially misstated his ability to pay, which CIFELLI signed under penalty of perjury on or about June 21, 2016 and the IRS received on or about June 30, 2016.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

## COUNTS THREE THROUGH SIX
### (Failure to Collect, Account For, and Pay Over Payroll Taxes)

16.     The allegations set forth in Paragraphs 1 through 15 of this Indictment are hereby realleged as if fully set forth herein.

17.     For the tax quarters ending March 31, 2015; June 30, 2015; September 30, 2015; and December 31, 2015, LBAB filed Forms 941 with the IRS reflecting taxes withheld from LBAB's employees' paychecks, but defendant CIFELLI willfully failed to pay over the payroll taxes due to the IRS.

18.     From on or about April 30, 2015 to on or about January 29, 2016, in Monmouth County, in the District of New Jersey and elsewhere, the defendant,

ENRICO CIFELLI,<br>
a/k/a "Rick Cifelli,"

did willfully fail to truthfully account for and pay over to the IRS all of the payroll taxes due and owing to the United States on behalf of LBAB and its employees, for each of the following quarters, with each calendar quarter constituting a separate count of this Indictment:

| Count | Tax Quarter Ending | Approximate Date of Filing |
|-------|--------------------|----------------------------|
| 3 | March 31, 2015 | April 30, 2015 |
| 4 | June 30, 2015 | July 31, 2015 |
| 5 | September 30, 2015 | November 12, 2015 |
| 6 | December 31, 2015 | January 29, 2016 |

In violation of Title 26, United States Code, Section 7202 and Title 18, United States Code, Section 2.

## COUNT SEVEN
### (Evasion of Assessment of Income Taxes)

19.    The allegations set forth in Paragraphs 1 through 18 of this Indictment are hereby realleged as if fully set forth herein.

20.    On or about May 4, 2016, through an accountant with an office in Woodbridge, New Jersey, defendant CIFELLI caused to be filed with the IRS a Form 1040-A for tax year 2015 on behalf of himself, married filing separately. That return stated that CIFELLI had taxable income of $51,000, with a resulting tax liability of $5,975.  The return also identified prior federal withholdings of $9,624 (reflected on a Form W-2 that CIFELLI received from LBAB).  As a result, the Form 1040-A claimed that a tax refund of $3,649 was due to CIFELLI from the IRS.  The IRS applied that refund as a credit against CIFELLI's outstanding tax liability.

21.    Defendant CIFELLI's 2015 Form 1040-A was false.  CIFELLI knew that the $9,624 that his Form W-2 stated had been withheld on his behalf by LBAB had not, in fact, been paid over to the IRS.  Therefore, CIFELLI knew that he in fact still owed the IRS his full personal income tax liability of $5,975 and was not in fact due a refund from the IRS.

22.    On or about May 4, 2016, in Middlesex County, in the District of New Jersey and elsewhere, the defendant,

ENRICO CIFELLI,
a/k/a "Rick Cifelli,"

knowingly and willfully attempted to evade and defeat a substantial part of the income tax due and owing to the United States, in that CIFELLI caused to be filed a false and fraudulent 2015 United States Individual Income Tax Return, Form 1040-A, as described in Paragraphs 20 and 21 above.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

A TRUE BILL

_____
PHILIP R. SELLINGER
United States Attorney

18

CASE NUMBER: 22-_172 (PGS)_

# United States District Court
## District of New Jersey

**UNITED STATES OF AMERICA**

v.

**ENRICO CIFELLI and
MICHELLE BOCCHIERI**

# INDICTMENT FOR

18 U.S.C. § 371
26 U.S.C. § 7201
26 U.S.C. § 7202
18 U.S.C. § 2

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

ELISA T. WIYGUL
ASSISTANT U.S. ATTORNEY
CAMDEN, NEW JERSEY
856-968-4929